## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

FILED by _PG_ D.C.

MAR 1 0 2017

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

**JOSEPH CELESTINE**

     Plaintiff

-v-

**JPMORGAN CHASE BANK, N.A.**

     Defendant.

_____/

## COMPLAINT

**COMES NOW** JOSEPH CELESTINE (hereinafter "Plaintiff") and files this complaint against

JPMORGAN CHASE BANK, N.A. (hereinafter "Defendant").  Plaintiff does as follows:

1.     Plaintiff brings this action out of Defendant repeated violations of the Fair Credit

Reporting Act (15 U.S.C. § 1681 et seq. [hereinafter "FCRA"] and repeated violations of the

Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. [hereinafter "TCPA"] and repeated

violations of the Florida Consumer Collection Practices Act, FLA STAT §559 [hereinafter

"FCCPA"] and out of state law violations which all relate to a debt with JPMORGAN CHASE

BANK, N.A. that is not owed by Plaintiff.

## JURISDICTION

2.     Personal jurisdiction exists over Defendant as they have the necessary minimum contacts

with the State of Florida and this suit arises out of their specific conduct with Plaintiff in

Florida.  All the actions described in this suit occurred in Florida.

3.     Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and through diversity

jurisdiction (28 U.S.C. Section 1332), and has supplemental jurisdiction of the state law claims

regarding the same transaction and events under 28 U.S.C § 1367(a). Jurisdiction of this claim is granted to this Court by 28 U.S.C. §§ 1331 (federal question jurisdiction), and § 1337 (proceedings arising under an act of Congress regulating commerce).

4.      This is an action for actual and statutory damages that exceed $100,000.00 exclusive of attorney's fees, pre-judgment interest and costs, between these diverse parties, for repeated violations of the "Fair Credit Report Act" (FCRA), 15 U.S.C. § 1681 et seq, the "Florida Consumer Collection Practices Act" (FCCPA) FLA STAT §559 and the "Telephone Consumer Protection Act" (TCPA), 47 U.S.C. § 227 *et seq*. and in violation of state and federal law, and the court has supplemental jurisdiction over state law claims under 28 U.S.C. §1367. and 15 U.S.C. § 1681p.

## VENUE

5.      Venue is proper as Plaintiff lives in this judicial district, the events took place in this judicial district, and the Defendant based based upon 28 U.S.C. § 1391(c), in that the Defendant JPMORGAN CHASE BANK, N.A. by virtue of principles of "long arm jurisdiction," do business in this state, and are subject to personal jurisdiction within this state, and because a substantial part of the events giving rise to the claims raised herein occurred within this district or state.

6.      Venue is proper in this Court.

## PARTIES

7.      Plaintiff, **JOSEPH CELESTINE** is a natural person, and a citizen of the State of Florida, who is a resident of this judicial district of Florida in Miami-Dade County, as defined by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681a(c).

8.      Defendant **JPMORGAN CHASE BANK, N.A.** (hereinafter "CHASE") is a "furnisher" authorized to do business in Florida and a company that furnishes consumer credit information to consumer reporting agencies as defined by the FCRA, 15 U.S.C. §1681s-2. and is located at 1111 POLARIS PARKWAY COLUMBUS OH 43240.

9.      Defendant JPMORGAN CHASE BANK, N.A. does qualify as a "person" as defined by section 559.72 and does business in Florida.

10.     Defendant JPMORGAN CHASE BANK, N.A. is a debt collector as defined by the FDCPA, Title 15 U.S.C. §1692a(6), Florida Statute §559.55(2) and is not exempt under Title 15 U.S.C. §1692a(6)(A) and is a control person as defined under F.S. §559.55(4), and engaged in a communication as defined under Florida Statute §559.55(2). "Communication" means the conveying of information regarding a debt directly or indirectly to any person through any medium and is a control person as defined under F.S. §559.55(4).

11.     According to the FCCPA, a communication which conveyed information regarding a debt directly or indirectly to any person through any medium regarding an alleged debt fall under FCCPA § 559.72(6) and states:

> ""Debt collector" means any person who uses **any** instrumentality of commerce within this state, whether initiated from within or outside this state, in any business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect**, directly or indirectly**, debts owed or due or asserted to be owed or due another. The term "debt collector" includes any creditor who, in the process of collecting her or his own debts, uses any name other than her or his own which would indicate that a third person is collecting or attempting to collect such debts…."

12.     Under the doctrine of respondent superior Defendant JPMORGAN CHASE BANK, N.A. is responsible for acts of their subsidiaries, managers and supervisors are responsible for the actions of their agents and their employees.

13.     Individuals who control and direct the practices of a creditor can be personally liable even if they act under the auspices of a corporate entity. *Alozynski v. Rubin & Debski*, P.A., 2010 WL 1849081 (M.D. Fla, May 7, 2010).   In addition, they may be liable as persons who "directly or indirectly" collect or attempt to collect a debt.  *Belin V. Litton Loan Serv., L.P.*, 2006 WL 1992410 (M.D. Fla. July 14, 2006).  The employees of a creditor who actually engaged in the allegedly unlawful misconduct and the creditor itself are jointly and severely liable for the resulting FCCPA violations.

14.     Defendant JPMORGAN CHASE BANK, N.A. is liable to Plaintiff under strict liability. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010).

15.     Effective October 1, 2014, 559.55(4) FS. "Control person" means an individual, partnership, corporation, trust, or other organization that possesses the power, directly or indirectly, to direct the management or policies of a company, whether through ownership of securities, by contract, or otherwise. The term includes, but is not limited to:

> a)      A company's executive officers, including the president, chief executive officer, chief financial officer, chief operations officer, chief legal officer, chief compliance officer, director, and other individuals having similar status or functions.
> b)      For a corporation, a shareholder who, directly or indirectly, owns 10 percent or more or that has the power to vote 10 percent or more, of a class of voting securities unless the applicant is a publicly traded company.
> c)      For a partnership, all general partners and limited or special partners who have contributed 10 percent or more or that have the right to receive, upon dissolution, 10 percent or more of the partnership's capital.
> d)      For a trust, each trustee.
> e)      For a limited liability company, all elected managers and those members who have contributed 10 percent or more or that have the right to receive, upon dissolution, 10 percent or more of the partnership's capital.

## **FACTUAL ALLEGATIONS**

16.     The CHASE account was opened on or about June 1, 2008.

17.     This was a private school loan and no payments were due because this loan was allegedly in deferment until November 1, 2011, the date Plaintiff completed his degree.

18.     The subject loan was obtained for a consumer transaction arising out of a transaction of money, property, insurance, or services primarily for personal, family, or household purposes.

19.     On or about March 18, 2015 Plaintiff discovered several derogatory items referring to his student loan deferment.  The items reported by CHASE as to the payment history contained many errors.  Plaintiff therefore mailed dispute letters to EXPERIAN, EQUIFAX and TRANSUNION (herein "Credit Bureaus") and these bureaus received Plaintiff's disputes. Plaintiff's disputes were thereafter forwarded to CHASE by EXPERIAN, EQUIFAX and TRANSUNION (Attached Exhibit "1").

20.     The first dispute letter required verification of items reported by CHASE as to incorrect balance amounts reported and incorrect monthly payment reported dating from June 1, 2008 to present.  The dispute letter also requested verification of monthly deferment payment history incorrectly reported as well.  These incorrect items were reported by CHASE and published to EXPERIAN, EQUIFAX and TRANSUNION credit reports.

21.     Each bureau reported different derogatory information such as different deferment periods and different amounts owed (Attached Exhibit "5").

22.     Defendant CHASE failed to provide any verification of listed items disputed and failed to provide any verification of the incorrect monthly deferment payment history reported to EXPERIAN, EQUIFAX and TRANSUNION about Plaintiff.

23.     The information with all three (3) Credit Bureaus EQUIFAX, EXPERIAN, and TRANSUNION were inconsistent and inaccurate. The express purpose of the FCRA was to require that consumer reporting agencies adopt and implement "reasonable procedures" for

ensuring that credit information about a consumer was collected, maintained, and dispensed "in a manner which is fair and equitable to the consumer with regard to the confidentiality, accuracy, relevancy and proper utilization of such information".  As a furnisher, CHASE is bound to report correct information, and upon inquiry and a dispute, provide supporting documentation within thirty (30) days.  CHASE failed to do so.

24.     Defendant CHASE failed to investigate the debt, this is obvious because If account was investigated properly, it would show that deferment ended November 1, 2011 and deferment would have never been reinstated, and verifiable proof would have been received by Plaintiff from CHASE via all three (3) Credit Bureaus EQUIFAX, EXPERIEAN, and TRANSUNION as verification for each item such as payment history month requested, or account along with items disputed would have been removed for failure to verify as required under the FCRA.

25.     All three (3) Credit Bureaus EXPERIAN, EQUIFAX and TRANSUNION responded to Plaintiff's first letter that the information was disputed on Plaintiff's credit report but Defendant CHASE failed to accurately verify or remove account information on Plaintiff's Credit Report with all three (3) Credit Bureaus EXPERIAN, EQUIFAX, and TRANSUNION.

26.     On or about April 28, 2015 the second letter requesting verification of the account was sent to all three of the Credit Bureaus EXPERIAN, EQUIFAX and TRANSUNION regarding the alleged debt CHASE Student loan. Plaintiff requested verifiable proof of all items for a second time with each of the Credit Bureaus (Attached Exhibit "2").  These bureaus received and forwarded this second dispute to CHASE.

27.     The Defendant CHASE failed to investigate the debt for the second time, this is obvious because all of the bureaus failed to provide a copy of verifiable proof to Plaintiff for a second

time and failed to remove the items or account information. Therefore, CHASE failed to engage in a reasonable investigation of the derogatory items disputed.

28.     If CHASE would have reasonably verified the derogatoriness items disputed by Plaintiff and provided verifiable documents to the credit bureaus as required by the FCRA, most if not all, of the derogatory items about the CHASE loan would have been removed by EXPERIAN, EQUIFAX and TRANSUNION.  Instead, CHASE failed to engage in any reasonable investigation of Plaintiff's dispute and continued to report incorrect derogatory items to EXPERIAN, EQUIFAX and TRANSUNION.  CHASE never sent any verifiable proof of the derogatory items they reported to Plaintiff, EXPERIAN, EQUIFAX or TRANSUNION.

29.     Defendant CHASE reported and has continued to erroneously report to EXPERIAN, EQUIFAX or TRANSUNION that Plaintiff allegedly owes $38,167 balance to Defendant CHASE and has been late in paying starting November 1, 2012.  This information is false. Plaintiff was in deferment until November 1, 2011, when Plaintiff obtained his degree.

30.     Defendant thereafter extended Plaintiff's deferment on November 1, 2012, and extended that deferment again on December 1, 2013 which continued until March 1, 2014 thereby re-aging the loan and erroneously reporting an incorrect monthly payment history on all three (3) of Plaintiff's Credit Reports from EXPERIAN, EQUIFAX, TRANSUNION (Attached Exhibit "5").

31.     Plaintiff has disputed directly to EXPERIAN, EQUIFAX, TRANSUNION and Defendant CHASE explaining that account items are reporting erroneously, and that no debt is owed to Defendant CHASE (Attached Exhibit "1") first dispute request to EXPERIAN, EQUIFAX and TRANSUNION (Attached Exhibit "2") second dispute request to EXPERIAN, EQUIFAX and TRANSUNION.

32.     Defendant CHASE has failed to provide Plaintiff's with verifiable proof of the derogatory items reported and refused to properly investigate or delete the account.

33.     CHASE failed to properly update and report these subsequent deferent updates on Plaintiff's credit reports regarding deferment periods resulting in the dissemination of false information being reported to EXPERIAN, EQUIFAX or TRANSUNION.

34.     Plaintiff also did not received notification under Section 15. USD 1692(g) "…failure to notify to dispute a debt".

35.     Plaintiff was denied a home loan on January 22, 2015 for $417,000 from the Veteran's Administration United Home Loans Maximum 2015 Loan Limit (Attached Exhibit "9") due to EQUIFAX, EXPERIAN and TRANSUNION credit reports and Defendant's CHASE continued reporting of false, derogatory information.

36.     Plaintiff was denied a car loan on January 20, 2015 from Southern Auto Finance Company for $30,000 (Attached Exhibit "10") due to EQUIFAX, EXPERIAN and TRANSUNION credit reports and Defendant's CHASE continued reporting of false, derogatory information.

37.     Plaintiff was denied a credit card on February 1, 2017 for $15,000 from Care Credit for Health (Attached Exhibit "11") due to EQUIFAX, EXPERIAN and TRANSUNION credit reports and Defendant's CHASE continued reporting of false, derogatory information.

38.     On or about December 31, 2016 plaintiff disputed a third time with EQUIFAX, EXPERIAN and TRANSUNION (Attached Exhibit "3")

39.     On or about February 1, 2017, plaintiff disputed a fourth time with EQUIFAX, EXPERIAN and TRANSUNION (Attached Exhibit "4")

40.      Plaintiff has yet to receive any verification of the incorrect items reported in his credit reports and of his numerous disputes.  Plaintiff has no information regarding the disputed items and never received the results of any ongoing investigations or deletions from his many disputes with EQUIFAX, EXPERIAN and TRANSUNION as required by the FCRA. There has been no change to his credit report as to the derogatory items reported by CHASE. Defendant CHASE has not reasonably investigated or verified any of the derogatory items disputed.

41.      After approximately two years of disputing and requesting verification, Plaintiff gave up and filed this lawsuit.

42.      On or about December 1, 2012 Plaintiff received a phone call to his cell phone number from CHASE representative Thomas F. Dixon.  Representative Thomas F. Dixon falsely communicated to Plaintiff that his deferments ended on November 1, 2012.

43.      Plaintiff was lead to believe previously by CHASE, that the deferment ended on November 1, 2011, the date Plaintiff completed his degree.

44.      Thomas F. Dixon stated that if Plaintiff did not make a payment on his CHASE student loan, his loan will be charged off.

45.      CHASE's representative Thomas F. Dixon offered Plaintiff a military deferment if Plaintiff was a veteran.  In this way, representative Thomas F. Dixon lead Plaintiff to believe that he was eligible for SCRA and Military Deferment because Plaintiff is a veteran, (Attached Exhibit "6", fax cover page that representative Thomas F. Dixon asked Plaintiff to fax in order to receive Military Deferment).

46.      Plaintiff later found out on March 18, 2015 the same day he sent his dispute letters for items on his credit report, part of the basis for his dispute, was that the dates of deferment were incorrect.  Plaintiff was never entitled to SCRA deferment because the SCRA covers all Active

Duty service members, Reservists and the members of the National Guard **while on active duty**. The protection begins on the date of entering active duty and generally terminates within 30 to 90 days after the date of discharge from active duty.

47.     Plaintiff has never been on active duty during the periods of deferment.  Representative Thomas F. Dixon, misrepresented Plaintiff's eligibility and re-aged the CHASE account (including late fees).  Subsequently, these deceptive deferments to renew re-aged the CHASE account causing further late payments on November 1, 2012 and March 1, 2013.

48.     Defendant CHASE is not concerned about the false reporting.  CHASE continues to falsely report derogatory information on Plaintiff's credit reports as Defendant CHASE did not intend or perform a reasonable investigation, and Defendant CHASE did not intend to delete unverifiable information.  There only purpose in the SCRA deferment was to re-age the account.

49.     Defendant CHASE has failed to remove any of the derogatory items they have reported despite failing to properly verify these derogatory items in Plaintiff's credit reports with EXPERIAN, EQUIFAX and TRANSUNION.

50.     Defendant CHASE failed to properly investigate Plaintiff's disputes, and if Defendant CHASE had properly followed FCRA guidelines the unverified derogatory items reported by CHASE would have been deleted.

51.     Despite knowing that the items reported by CHASE are false, Defendant CHASE has completely abdicated their obligations under federal and state law and have instead chosen to continue to disseminate false, derogatory items about Plaintiff.  The credit bureaus continue to "parrot" whatever false and incomplete information **ALREADY** reported to EXPERIAN, EQUIFAX and TRANSUNION by Defendant CHASE.  As such, Defendant CHASE continues to knowingly and willfully disseminate false, derogatory information about Plaintiff and

publishes same in his credit reports with EXPERIAN, EQUIFAX and TRANSUNION with malice.

52.     Federal courts have condemned the practice of "parroting" but yet Defendant CHASE continues to do so. The FCRA evinces Congress's intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear "grave responsibilities," 15 U.S.C. § 1681(a)(4), to ensure the accuracy of that information. The "grave responsibilit[y]" imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a "reinvestigation" that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute.

53.     The primary reason why Defendant CHASE has re-aged, placed and kept false information on Plaintiff's reports is that furnishers (such as Defendant CHASE) provide enormous financial rewards to EXPERIAN, EQUIFAX and TRANSUNION, and these false items reported often force consumers to pay to have false, incomplete and misleading information removed, and creating greater profits to Defendant CHASE (and the bureaus).

54.     The importance of keeping false information on credit reports is that Defendant CHASE understands that one of the most powerful methods furnishers have to wrench payments from a consumer is by placing and keeping false or misleading information on the consumer's credit reports.

55.     Defendant CHASE has a policy and procedure to refuse to properly update credit reports of consumers, in an attempt to continue unfair and deceptive collection methods.

56.     The reason is to keep false information on the credit report to force Plaintiff to pay a debt that is not owed or which adds illegal late payment and fees to the balance.

57.     Defendant CHASE has promised through its subscriber agreements or contracts with EXPERIAN, EQUIFAX and TRANSUNION, to accurately update accounts. Instead Defendant CHASE has willfully, maliciously, recklessly, wantonly, and/or negligently failed to follow the requirements set forth under the FCRA and state law, which has resulted in the intended consequences of this information remaining on Plaintiff's credit reports.

58.     Defendant CHASE assumed a duty, through its' subscriber agreement and other actions, to accurately report the balances and this duty was breached in a negligent, wanton, reckless, willful, intentional, and/or malicious manner.

59.     Defendant CHASE has a policy to "park" its accounts on credit reports.  This is a term in the industry for keeping a false, incomplete or misleading account information on the credit report so that the consumer will be forced to pay money in order to obtain a refinancing or to qualify for a loan or to increase the consumer's credit score from the artificially lowered score which directly resulted from the EXPERIAN, EQUIFAX and TRANSUNION reports resulting in lowered credit scores.

60.     In parking or allowing the parking of an account, the Defendant CHASE knows that they are violating their obligations and duties under federal and state law to accurately report the account in the hopes of extorting money from Plaintiff.

61.     Defendant CHASE knows that parking a false account and false information will lead to false and defamatory information being published every time the Plaintiff's credit report is accessed (as happened to Plaintiff).  These malicious and intentional acts are designed with the goal to force the Plaintiff to pay on an account that is no longer owed by Plaintiff and that has illegal amounts added to it.

62.     Defendant CHASE maliciously, willfully, intentionally, recklessly, and/or negligently failed to review and remove the derogatory information disputed by Plaintiff, CHASE failed to remove derogatory items that they already in their files and failed to conduct a reasonable investigation as the Plaintiff's disputes.  As a direct and proximate cause of this deception, EQUIFAX, EXPERIAN and TRANSUNION failed to delete unverified information found to be inaccurate as required by FCRA, failed to replace the inaccurate information with accurate information, and/or reinserted the false derogatory items disputed without following the dictates of the FCRA.

63.     At all relevant times, Defendant CHASE failed to maintain and failed to follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit report, concerning the account in question, violating 15 U.S.C. § 1681e(b) and state law.

64.     Defendant CHASE failed to properly maintain and failed to follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit information and Plaintiff's credit report, concerning the amounts, deferment and late monthly payment periods, thus violating state law and the FCRA.

65.     These violations occurred before, during, and after Plaintiff's multiple disputes and multiple requests for verification with EXPERIAN, EQUIFAX and TRANSUNION.

66.     As described more fully above, Defendant CHASE has reported knowingly false information alleging that Plaintiff was 90 days late, 60 days late, 30 days late, and "unknown" late several times with EXPERIAN, EQUIFAX and TRANSUNION.

67.      Plaintiff disputed this account and requested verification of all monthly payment history of deferments, amounts, and dates as "items" in CHASE account with EXPERIAN, EQUIFAX and TRANSUNION on or about March 18, 2015, and second a second time on or April 28, 2015.

68.     Defendant CHASE has failed to forward to Plaintiff, EQUIFAX, EXPERIAN and TRANSUNION documentation of all items disputed in the CHASE account including: a) A verifiable copy of the description of the investigation for items of each monthly deferment payment history, amounts, and dates. b) A verifiable copy of the source of information pertaining to each monthly deferment payment history item, amounts, and dates. c) A verifiable copy of the information of each deferment payment history item, amounts and dates. d) A verifiable copy of the exact process used to verify all monthly deferment payment history items, amounts and dates.

69.     Defendant CHASE has taken illegal aggressive, abusive, fraudulent and deceptive actions in a continued effort to collect the alleged debt against Plaintiff.  These actions include the continued reporting of the debt to third parties, including consumer-reporting agencies such as EXPERIAN, EQUIFAX and TRANSUNION.

70.     The conduct of Defendant CHASE has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and reputation, and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

71.     Defendant CHASE knows that their conduct is wrong and negligent, and has been sued by others multiple times for this type of wrongful conduct.

72.     Significant punitive damages are needed to stop this type of inappropriate behavior from continuing to happen.

73.     All actions taken by employees, agents, servants, or representatives of any type for the Defendant CHASE were taken in the line and scope of such individuals (or entities') employment, agency or representation.  The actions by these persons were at all times controlled by Defendant CHASE.

74.     Defendant CHASE is liable to Plaintiff through the doctrine of Respondent Superior for the wrongful, intentional and negligent acts, errors, and omissions done in violation of state and federal law by their employees and agents, including, but not limited to, violations of the FCRA and Florida tort law, in their attempts to collect this debt from Plaintiff.

75.     All actions taken by Defendant CHASE was done initially with negligence, continuously with malice, was done willfully, and was done with either the desire to harm Plaintiff and/or with the knowledge that their actions would very likely harm Plaintiff.   Having certified compliancw with all state and federal law including compliance with the FCRA, their actions were taken in violation of the FCRA and/or state law and/or that they knew or should have known that their actions were in reckless disregard of the FCRA and/or state law.

76.     As such, Defendant CHASE has engaged in a pattern and practice of wrongful and unlawful behavior with respect to derogatory items reported to EXPERIAN, EQUIFAX and TRANSUNION.

77.     This false information regarding Plaintiff's account and consumer reports and as such Defendant is subject to punitive damages and statutory damages and all other appropriate measures to punish and deter similar future conduct by their actions.

78.     Defendant CHASE negligently and/or wantonly hired, trained, retained, or supervised incompetent agents and employees and are thereby responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

79.     Defendant CHASE has actual knowledge that Plaintiff's reported account information on his credit report is past the allotted time to collect a debt. Therefore, CHASE may not use any false, deceptive, or misleading representation or means in connection with the collection of any

debt, and that the "false representation of the character, amount, or legal status of any debt" constitutes a violation of the FCCPA.

80.    Plaintiff does not owe alleged money to Defendant CHASE.

## PLAINTIFF'S CLAIMS AS TO THE TCPA AND FCCPA

81.    A CHASE representative called on or about 8:15 pm on March 19, 2014 about Plaintiff's Student loan being overdue.  This representative, whose name was not provided when asked, failed to provide meaningful disclosure of her identity as representative of CHASE, and failed to properly identify herself when Plaintiff asked for her name.

82.    Because CHASE representative refused to identify herself, Plaintiff stated that he did not want to receive further calls from CHASE or it's representatives ever again, Plaintiff stated that he was rescinding all previous permissions given to CHASE to contact Plaintiff because he would be disputing the alleged debt.  The unidentified representative ignored Plaintiff, and continued to discuss the alleged CHASE Student loan account.  Plaintiff continued to state that he would be disputing the alleged debt, and not to contact him, they continued to ignore Plaintiff, so out of frustration Plaintiff hung up the phone.  As a consequence of this argument, Plaintiff discovered that the unknown representative worked for CHASE.

83.    Plaintiff would pick up the phone and hear a pause every time he would receive a call from CHASE, before an operator would pick up on the other end of the phone.

84.    Plaintiff feeling harassed and frustrated answered one of the phone calls on or about 8: 35 pm on March 17, 2014, whereas the Plaintiff received a call from a representative that improperly identified herself as Linda.  Linda also refused to give her last name or any employee number to properly identify herself, failing to provide any meaningful identity.  Linda then asked Plaintiff when he was going to make a payment, without first explaining the reason or nature of

the call.  When Plaintiff asked that Linda not call him again. Linda then began threatening

Plaintiff with the possibility of lawsuit and a bad credit history report if Plaintiff did not make a

payment.

85.      Plaintiff then told Linda again to please stop calling and that he did not want anymore

calls from the Defendant CHASE. Plaintiff told Linda that he wanted CHASE to cease and desist

from any and all further communications.

86.      Plaintiff also stated to Linda that he rescinded all previous permissions the Defendant

CHASE may have to contact Plaintiff and/or Plaintiff's family and friends.  Plaintiff also told

Linda that he was disputing the loan, and told Linda that if CHASE continued to call he would

have to file a lawsuit against CHASE. Linda ignored everything Plaintiff said, and asked Plaintiff

if the contact information CHASE had was correct. Plaintiff was frustrated that Linda was

ignoring him, and hung up the phone.

87.      Minutes later after Plaintiff hung up on Linda, on or about 8:35 March 17, 2014 another

call from number 813-584-8803, later identified as the number belonging to Defendant CHASE,

was received by Plaintiff and no message was left.  CHASE continued to call and harass Plaintiff,

and messages were left by representatives Linda, Jameson, Marcie, Leslie, and Alice as they

identified themselves in the messages they left Plaintiff.  Subsequent calls and/or

communications were made as follows:

1.  Call was received at 8:15 pm on 03/19/2014, from a telephone number (813)584-8803
    belonging to CHASE/Unidentified Caller;
2.  Call was received at 8:24 pm on 03/19/2014, from a telephone number (813)584-8803
    belonging to CHASE/Linda;
3.  Call was received at 8:24 pm on 03/20/2014, from a telephone number (813)584-8803
    belonging to CHASE/Linda;
4.  Call was received at 1:27 pm on 04/08/2014, from a telephone number (813)584-8803
    belonging to CHASE/Jameson;

5. Call was received at 8:35 pm on 04/17/2014, from a telephone number (813)584-8803 belonging to CHASE/No message was left;

6. Call was received at 8:52 pm on 04/23/2014, from a telephone number (813)584-8803 belonging to CHASE/Jameson;

7. Call was received at 8:51 pm on 04/29/2014, from a telephone number (813)584-8803 belonging to CHASE/Jameson;

8. Call was received at 9:03 pm on 05/07/2014, from a telephone number (813)584-8803 belonging to CHASE/Jameson;

9. Call was received at 3:55 pm on 05/13/2014, from a telephone number (813)584-8803 belonging to CHASE/Leslie;

10. Call was received at 2:04 pm on 05/19/2014, from a telephone number (813)584-8803 belonging to CHASE/Jameson;

11. Call was received at 4:33 pm on 05/28/2014, from a telephone number (813)584-8803 belonging to CHASE/Leslie;

12. Call was received at 5:43 pm on 05/30/2014, from a telephone number (813)584-8803 belonging to CHASE/Jameson;

13. Call was received at 3:20 pm on 06/03/2014, from a telephone number (813)584-8803 belonging to CHASE/No message was left;

14. Call was received at 2:20 pm on 06/12/2014, from a telephone number (813)584-8803 belonging to CHASE/No message was left;

15. Call was received at 7:54 pm on 06/17/2014, from a telephone number (813)584-8803 belonging to CHASE/Marcie;

16. Call was received at 4:17 pm on 06/18/2014, from a telephone number (813)584-8803 belonging to CHASE/No message was left;

17. Call was received at 8:02 pm on 06/18/2014, from a telephone number (813)584-8803 belonging to CHASE/Marcie;

18. Call was received at 2:03 pm on 06/23/2014, from a telephone number (813)584-8803 belonging to CHASE/Marcie;

19. Call was received at 4:42 pm on 06/17/2014, from a telephone number (813)584-8803 belonging to CHASE/Alice;

88. Plaintiff received nineteen (19) calls in addition to further calls, which Plaintiff can request from Defendant CHASE through ongoing discovery (Exhibit "7").

89. These calls were made with malice, in order to frustrate, abuse and oppress the Plaintiff.

90. Defendant CHASE willfully and knowingly called Plaintiff repeatedly after being told to cease calling Plaintiff.

**DECEPTION FROM CHASE AND NATIONAL RECOVERY GROUP**

91.    On or about February 6, 2015 Plaintiff received a letter (Exhibit "8") The letter is confusing, Plaintiff doesn't know if it comes from CHASE or NATIONAL RECOVERY GROUP.  The letter is unclear and ambiguous.

92.    NATIONAL RECOVERY GROUP is a debt collector but failed to provide Plaintiff a Mini-Miranda, any meaningful notification under 1692(g) and failed to provide their complete information in a way to meaningfully identify themselves.

## COUNT I
## NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (FCRA-15 U.S.C. §1681o)

93.    All paragraphs of this Complaint are expressly adopted and incorporated herein 1-92 as if fully set forth herein.

94.    Defendant' CHASE negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including §1681o but not limited to:

    (a) Failing to review all relevant information and follow reasonable procedures to assure maximum possible accuracy of the information in Plaintiff's consumer reports, as required by 15 U.S.C. §1681e(b); and
    (b) Failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i;
    (c) Failing to conduct an investigation of the inaccurate information that Plaintiff disputed pursuant to FCRA § 609; and
    (d) Continuing to furnish and disseminate inaccurate and derogatory credit, account status and other information concerning the Plaintiff to credit reporting agencies and other entities despite knowing that said information was false or inaccurate U.S.C. §1681b; and
    (e) Failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. §1681s-2(B).

95.    In Plaintiff's EQUIFAX credit report, there are thirty (30) items disputed and reported by CHASE as "Monthly Payment History".  These items reported from November, 2012 to April, 2015 in Plaintiff's CHASE account on his credit report, have not been verified and continued to appear from April 18, 2015 to March, 2017 for twenty-four (24) months, for a total of seven hundred and twenty (720) willful violations of the FCRA (Exhibit "5").

96.     In Plaintiff's EXPERIAN credit report, there are Thirty-Two (32) items disputed and reported as "Monthly Payment History". These disputed items appeared in Plaintiff's credit report from December, 2011 to July, 2014 in Plaintiff's CHASE account. These items have not been verified and continued to appear from April 18, 2005 to March, 2017 for twenty-four (24) months, for a total of seven hundred and sixty-eight (768) willful violations of the FCRA (Exhibit "5").

97.     In Plaintiff's TRANSUNION credit report, there are Forty-Three (43) derogatory items reported as "Monthly Payment History". These items were disputed and appeared in Plaintiff's credit report from November, 2010 to May, 2014 in Plaintiff's CHASE account. These disputed items have not been verified and continued to appear in Plaintiff's credit report from April 18, 2005 to March, 2017. These items have continued to report monthly for twenty-four (24) months, for a total of one thousand and thirty-two (1,032) willful violations of the FCRA (Exhibit "5").

98.     There is a total of one hundred and five (105) items disputed with EQUIFAX, EXPERIAN, and TRANSUNION, as to the CHASE account that have not been verified and continued to appear from April 18, 2015 to March 2017 for a total of twenty-four (24) months, for a total of two thousand five hundred and twenty (2,520) willful violations of the FCRA (Exhibits "5").

99.     EXPERIAN, EQUIFAX, and TRANSUNION are "consumer reporting agencies," as codified at 15 U.S.C. § 1681a(e).

100.    Defendant CHASE is an entity who, regularly and in the course of business, furnishes information to one or more consumer reporting agencies about its transactions or experiences with any consumer and therefore constitutes a "furnisher," as codified at 15 U.S.C. § 1681s-2.

101.    Plaintiff notified EXPERIAN, EQUIFAX, and TRANSUNION directly of a dispute on the Defendant's CHASE account completeness and/or accuracy, as reported.  These entities received and forwarded each dispute to CHASE.

102.    Plaintiff disputed and requested verification pursuant to FCRA § 609 on the CHASE account March 18, 2015.  Subsequently Defendant CHASE failed to delete derogatory items found to be inaccurate or unverified, and reinserted the derogatory information without following the FCRA 15 U.S.C. §1681 et seq.  CHASE failed to properly investigate Plaintiff's disputes, **negligently** violating the FCRA.

103.    Defendant CHASE failed to delete information found to be inaccurate or unverifiable, reinserted the derogatory information without following the FCRA, and failed to properly verify and investigate Plaintiff's disputes.

104.    At all relevant times, Defendant CHASE failed to maintain and follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit report, concerning the accounts in question, violating 15 U.S.C. § 1681e(b).

105.    Plaintiff alleges that Defendant CHASE negligently failed to conduct a proper and lawful reinvestigation, and simply parroted the same information on Defendant's credit report.

106.    Defendant CHASE actions were taken in violation of the FCRA 15 U.S.C. §1681 et seq, they knew or should have known that their actions were in reckless disregard of the FCRA.

107.    All of the violations of the FCRA proximately caused the injuries and damages set forth in this Complaint.

108.    As a result of Defendant CHASE violations of the FCRA, Plaintiff has suffered, continues to suffer, and will suffer future damages, including denial of credit, lost opportunity to

receive credit, damage to reputation, worry, distress, frustration, embarrassment, and humiliation, all to his damages, in an amount to be determined by the jury.

109.    Plaintiff requests a jury trial on all claims pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**WHEREFORE,** Plaintiff JOSEPH CELESTINE prays for a judgment as follows on Plaintiffs First Claim for Relief for negligent violations of the FCRA against Defendant CHASE:

      (a) Actual damages in an amount to be determined by the jury; pursuant to 15 U.S.C. §1681o(a); and
      (b) Punitive damages in an amount to be determined by the jury; pursuant to 15 U.S.C. §1681o(a)(2); and
      (c) Statutory damages as determined by the court; pursuant to 15 U.S.C. §1681o(a); and
      (d) Attorney fees and costs pursuant to 15 U.S.C. §1681o(a)(3) and §1681o(a)(2); and
      (e) Compensatory and Nominal damages in an amount to be determined by the jury; and
      (f) Costs and expenses incurred in this action; and
      (g) Injunctive relief to prevent further violations; and
      (h) For such other further relief, as may be just and proper.

## COUNT II
### WILLFULL VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (FCRA-15 U.S.C. §1681n)

110.    All paragraphs of this Complaint are expressly adopted and incorporated herein 1-92 as if fully set forth herein.

111.    Defendant CHASE <u>willfully</u> failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including §1681n but not limited to:

      (a) Failing to review all relevant information and follow reasonable procedures to assure maximum possible accuracy of the information in Plaintiff's consumer reports, as required by 15 U.S.C. §1681e(b); and
      (b) Failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i;
      (c) Failing to conduct an investigation of the inaccurate information that Plaintiff disputed pursuant to FCRA § 609; and
      (d) Continuing to furnish and disseminate inaccurate and derogatory credit, account status and other information concerning the Plaintiff to credit reporting agencies

and other entities despite knowing that said information was false or inaccurate U.S.C. §1681b; and

(e) Failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. §1681s-2(B).

112.    In Plaintiff's EQUIFAX credit report, there are were thirty (30) items disputed reported as "Monthly Payment History". These derogatory items disputed were reported from November, 2012 to April, 2015 in CHASE account. These derogatory items have not been verified and continued to appear in Plaintiff's credit report from April 18, 2015 to March, 2017 for twenty-four (24) months, for a total of seven hundred and twenty (720) willful violations of the FCRA (Exhibit "5").

113.    In Plaintiff's EXPERIAN credit report, there are thirty-two (32) items reported as "Monthly Payment History". These derogatory items disputed appeared in Plaintiff's credit report from December, 2011 to July, 2014 in Plaintiff's CHASE account and have not been verified. These derogatory items continued to appear in Plaintiff's credit report from April 18, 2005 to March, 2017 for twenty-four (24) months, for a total of seven hundred and sixty-eight (768) willful violations of the FCRA (Exhibit "5").

114.    In Plaintiff's TRANSUNION credit report, there are forty-three (43) items reported as "Monthly Payment History". These disputed items were reported from November, 2010 to May, 2014 in Plaintiff's CHASE account. These derogatory items have not been verified and continued to appear from April 18, 2005 to March, 2017 for twenty-four (24) months, for a total of one thousand and thirty-two (1,032) willful violations of the FCRA (Exhibit "5").

115.    The total of one hundred and five (105) items disputed with EQUIFAX, EXPERIAN, and TRANSUNION, in Plaintiff's CHASE account have not been verified and continued to appear in Plaintiff's credit report from April 18, 2015 to March 2017 for twenty-four (24) months, for a

total of two thousand five hundred and twenty (2,520) willful violations of the FCRA (Exhibit "5").

116.    EXPERIAN, EQUIFAX, and TRANSUNION are "consumer reporting agencies," as codified at 15 U.S.C. § 1681a(e).

117.    Defendant CHASE is an entity who, regularly and in the course of business, furnishes information to one or more consumer reporting agencies about its transactions or experiences with any consumer and therefore constitutes a "furnisher," as codified at 15 U.S.C. § 1681s-2.

118.    Plaintiff notified EXPERIAN, EQUIFAX, and TRANSUNION directly of a dispute on the Defendant's CHASE account completeness and/or accuracy, as reported.

119.    Plaintiff disputed and requested verification pursuant to FCRA § 609 on the CHASE account on April 28, 2015 for the 2nd time, on December 28, 2016 for the 3rd time, and again on February 1, 2017 for the 4th time.  Subsequently Defendant CHASE failed to delete information found to be inaccurate, or unverifiable and reinserted the information without following the FCRA 15 U.S.C. §1681 et seq.  CHASE failed to properly investigate Plaintiff's disputes, **willfully** violating the FCRA.

120.    Defendant CHASE failed to delete information found to be inaccurate, or unverifiable and reinserted the information without following the FCRA.  CHASE failed to properly verify and investigate Plaintiff's disputes.

121.    At all relevant times, Defendant CHASE failed to maintain and follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit report, concerning the accounts in question, violating 15 U.S.C. § 1681e(b).

122.    Plaintiff alleges that Defendant CHASE failed to conduct a proper and lawful reinvestigation, and simply parroted the same information on Defendant's credit report.

123.    All actions taken by the Defendant CHASE were done with malice, were done <u>willfully</u>, and were done with either the desire to harm Plaintiff and/or with the knowledge that their actions would very likely harm Plaintiff.

124.    Defendant CHASE actions were taken in violation of the FCRA 15 U.S.C. §1681 et seq, they knew or should have known that their actions were in reckless disregard of the FCRA.

125.    All of the violations of the FCRA proximately caused the injuries and damages set forth in this Complaint.

126.    As a result of Defendant CHASE violations of the FCRA, Plaintiff has suffered, continues to suffer, and will suffer future damages, including denial of credit, lost opportunity to receive credit, damage to reputation, worry, distress, frustration, embarrassment, and humiliation, all to his damages, in an amount to be determined by the jury.

127.    Plaintiff requests a jury trial on all claims pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**WHEREFORE**, Plaintiff JOSEPH CELESTINE prays for a judgment as follows on Plaintiffs First Claim for Relief for willful violations of the FCRA against Defendant CHASE

    (a) Actual damages in an amount to be determined by the jury; pursuant to 15 U.S.C. §1681n(a); and

    (b) Punitive damages in an amount to be determined by the jury; pursuant to 15 U.S.C. §1681n(a)(2); and

    (c) Statutory damages as determined by the court; pursuant to 15 U.S.C. §1681n(a); and

    (d) Attorney fees and costs pursuant to 15 U.S.C. §1681n(a)(3) and §1681n(a)(2); and

    (e) Compensatory and Nominal damages in an amount to be determined by the jury; and

    (f) Costs and expenses incurred in this action; and

    (g) Injunctive relief to prevent further violations; and

    (h) For such other further relief, as may be just and proper.

## COUNT III
## NEGLIGENT, WANTON, AND/OR INTENTIONAL HIRING AND

## SUPERVISION OF INCOMPETENT EMPLOYEES OR AGENTS

128.    All paragraphs of this Complaint are expressly adopted and incorporated herein 1-92 as if fully set forth herein.

129.    Defendant CHASE allowed and encouraged their agents and employees to break the law.

130.    Defendant CHASE is aware of the wrongful conduct of their agents and employees.

131.    Defendant CHASE approve of their incompetent employees and agents who are involved in credit reporting.

132.    Defendant CHASE negligently, wantonly, and/or intentionally hired, trained, retained, or supervised incompetent credit reporting individuals and/or entities, who were allowed or encouraged to violate the law as was done to Plaintiff, and Defendant is thereby responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

   **WHEREFORE**, Plaintiff prays that judgment be entered against Defendant CHASE for all damages allowable (including statutory, actual, compensatory, nominal and punitive), costs, expenses, attorney fees, injunctive relief to prevent further violations, and for such other and further relief as may be just and proper.

## COUNT IV
## NEGLIGENT, WANTON, AND INTENTIONAL CONDUCT

133.    All paragraphs of this Complaint are expressly adopted and incorporated herein 1-92 as if fully set forth herein.

134.    Defendant CHASE owes a duty to anyone they come in contact with to act reasonably so as to not unreasonably cause harm.

135.    Defendant CHASE assumed a duty to act reasonably towards Plaintiff and not to unreasonably cause Plaintiff harm.

136.    Defendant CHASE owes a duty to consumers against whom they are collecting to act reasonably.

137.    All of the actions described in this Complaint demonstrate that Defendant CHASE did not act reasonably towards the Plaintiff.

138.    Defendant CHASE by their described conduct breached their duty to act reasonably towards Plaintiff.

139.    Defendant CHASE proximately caused injuries and damages to Plaintiff which was of the precise nature that Defendant CHASE anticipated causing when they breached their duty to act reasonably.

140.    Defendant CHASE knew, or should have known, that their conduct was likely to lead to the Plaintiff's injuries yet they acted despite this knowledge.

141.    Defendant CHASE acted with full knowledge and with the design and intent to cause harm to Plaintiff.

142.    Defendant CHASE was successful in their design, intent, and plan to cause harm to Plaintiff and this is the corporate policy of Defendant when dealing with consumers who do not pay debts that Defendant CHASE alleges are owed.

143.    Defendant CHASE acted with negligence, malice, wantonness, recklessness, and/or intentional conduct in their dealings with and about Plaintiff as set forth in this Complaint.

144.    It was foreseeable, and Defendant CHASE did in fact foresee that the actions of the Defendant CHASE would lead and did lead to the exact type of harm suffered by Plaintiff.

145.    Defendant CHASE acted with negligence, malice, wantonness, recklessness, and/or intentional conduct in their dealings with and about Plaintiff as set forth in this Complaint.

146.    Such negligence, malice, wantonness, recklessness, willfulness, and/or intentional conduct proximately caused the damages set forth in this complaint.

147.    As a result of this conduct, action, and inaction of Defendant CHASE Plaintiff has suffered damage as set forth in this Complaint.

WHEREFORE, Plaintiff prays that judgment be entered against Defendant CHASE for all damages allowable (including statutory, actual, compensatory, nominal and punitive), costs, expenses, attorney fees, injunctive relief to prevent further violations, and for such other and further relief as may be just and proper.

### COUNT V
### VIOLATIONS OF TELEPHONE CONSUMER PROTECTION ACT
### (47 U.S.C. § 227 *et seq.*)

148.    All paragraphs of this Complaint are expressly adopted and incorporated herein 1-92 as if fully set forth herein.

149.    Defendant CHASE willfully and knowingly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system and/or used a pre-recorded or artificial voice to Plaintiff's cellular telephone without Plaintiff's consent and after Plaintiff's request to cease all communications in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Defendant CHASE for:

(a) Damages;

(b) Statutory damages for each violation of the TCPA 47 U.S.C. § 227(b)(3)(B); and

(c) Treble statutory damages for each knowing or willful violation of the TCPA 47 U.S.C. § 227(b)(3)(C); and

(d) A permanent injunction prohibiting Defendant from engaging in the violating practices; and

(e) Attorney's fees, litigation expenses and costs of the instant suit; and

(f) Such other or further relief as the Court deems proper.

## COUNT VI
## FLORIDA CONSUMER COLLECTION PRACTICES ACT
(Fla. Stat. § 559.72(7))

150.    All paragraphs of this Complaint are expressly adopted and incorporated herein 1-92 as if fully set forth herein.

151.    By Defendant CHASE negligent and willful conduct in continuing to contact Plaintiff despite having actual knowledge that Plaintiff did not consent to be called, by using automatic telephone dialing equipment to call Plaintiff's cellular telephone and using an artificial or pre-recorded voice, by calling Plaintiff multiple times in a short time span, and by communicating with Plaintiff in a manner reasonably expected to harass, Defendant CHASE engage in conduct which can reasonably be expected to abuse or harass Plaintiff in violation of Fla. Stat. § 559.72(7).

152.    Defendant knowingly and with malice, disseminated false information causing Plaintiff to lose opportunities to gain credit, purchase a home and car.

153.    Each harassing call is a separate violation of the FCCPA and a separate count in this complaint.

154.    As such, CHASE knowingly and with malice engaged in collection actions not legally allowed to be taken against Plaintiff in violation of the FCCPA.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Defendant CHASE for:

(g) Actual and statutory damages; and

(h) A permanent injunction prohibiting Defendant from engaging in the violating

practices; and

(i) Attorney's fees, litigation expenses and costs of the instant suit; and

(j) Such other or further relief as the Court deems proper.

### **TRIAL BY JURY DEMANDED**

Respectfully Submitted,

**JOSEPH CELESTINE**
1803 SW 23 Terr
Miami, Florida, 33145
(305) 417-2329
Jalva321@gmail.com