UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

JOSEPH CELESTINE,                                             CASE NO. 1:17-cv-20915-KMM

    Plaintiff,

v.

JPMORGAN CHASE BANK, N.A.,

    Defendant.
_____/

**DEFENDANT JPMORGAN CHASE BANK, N.A.'S
VERIFIED MOTION FOR ATTORNEYS' FEES**

    Defendant, JPMorgan Chase Bank, N.A. ("JPMC"), pursuant to 17 U.S.C. § 505 and Southern District of Florida Local Rule 7.3(a), moves for its prevailing party attorneys' fees against the plaintiff Joseph Celestine ("Plaintiff") in the amount of $166,942.00, in addition to its taxable costs in the amount of $3,959.85.[1]

**I.     INTRODUCTION**

    As confirmed by the Court's May 11, 2018 Order Granting JPMC's Motion for Summary Judgment (Dkt. No. 105) (the "Summary Judgment Order"), after more than a year of costly litigation over Plaintiff's spurious claims, Plaintiff failed to assert any viable cause of action against JPMC in bringing this action. Specifically, the Court ruled in the Summary Judgment Order that Plaintiff had failed to offer any evidence to support his primary claims for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. (the "FCRA") (Counts I & II) and, contrary to Plaintiff's allegations, JPMC had fully satisfied its obligations under the FCRA. The

---

[1] JPMC has separately set forth its entitlement to taxable costs in its Application for Bill of Costs and Supporting Memorandum of Law. See Dkt. No. 107.

Court further held that Plaintiff's claim for violation of the Florida Consumer Collection Practices Act, Florida Statutes sections 559.55-559.785 (the "FCCPA") (Count VI) lacked merit because it was time-barred and preempted, as well as waived as a result of Plaintiff's failure, in his opposition, to address the arguments related thereto in JPMC's Motion for Summary Judgment.  Accordingly, the Court granted summary judgment in JPMC's favor on Plaintiff's FCRA and FCCPA claims, as well as on Plaintiff's remaining claims.

Now, as the prevailing party in this action, JPMC moves this Court for its reasonable attorneys' fees, as statutorily provided under the FCRA and FCCPA.  As set forth below, JPMC is entitled to recover its reasonable fees incurred in defending both Plaintiff's FCRA claims brought in bad faith and Plaintiff's FCCPA claim that failed to raise any justiciable issue of law or fact.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Plaintiff's Fraudulent Loan Application And Misuse Of The Loan Proceeds

On June 10, 2008, Plaintiff submitted to JPMC an application for a student loan (the "Loan"), which he claimed he would use to finance his education at the University of Maryland University College ("UMUC").  (See Declaration of Angela R. Borders ("Borders Declaration") ¶ 5 & Ex. A; Deposition of Joseph Celestine ("Celestine Depo.") 84:14-16.)[2]  The Loan application further represented that Joseph Cambronne agreed to act as Plaintiff's co-signer for the Loan, as evidenced by his supposed signature.  (Borders Decl. Ex. A, at 2-3.)  Based on these representations, JPMC approved the application and issued Plaintiff a $21,790.00 disbursement check, representing the Loan proceeds, which Plaintiff and, supposedly, Mr. Cambronne endorsed and Plaintiff negotiated.  (Id. ¶ 6 & Ex. B.)

---

[2] The Borders Declaration appears at Dkt. Nos. 68-1 & 93 and the cited excerpts of the Celestine Deposition appear at Dkt. No. 68-2.

During discovery, however, Mr. Cambronne offered sworn testimony that he did not agree to co-sign the Loan for Plaintiff and that his purported signatures on the Loan application and disbursement check are forgeries.  (Declaration of Joseph Cambronne ¶¶ 3, 5, 7.)[3]  After becoming aware of this testimony, Plaintiff submitted numerous filings seeking to strike Mr. Cambronne's testimony, only further highlighting the suspect Loan application.  (See, e.g., Dkt. Nos. 76, 80-81.)  In these filings, Plaintiff volunteered that "a family member convinced Mr. Cambronne to sign several loans with parties, including Plaintiff in a purported 'fraud scheme'" and further that "Mr. Cambronne willingly signed several loans with other parties- including [Bank of America]- no doubt under request of this unknown family member."  (Dkt. No. 95 ¶ 8.)  Plaintiff did not explain how he suddenly knew this information (after claiming he could not recall it during his deposition), but the filings appeared to be nothing more than a transparent attempt to explain Plaintiff's deceitful Loan application, or otherwise create plausible deniability for it.  Further suggesting nefarious conduct, Mr. Cambronne is elderly, primarily speaks Creole and does not speak English fluently.

Discovery further revealed that, contrary to Plaintiff's representations in the Loan application, Plaintiff did not use the Loan proceeds to pay for his education at UMUC and failed to notify JPMC of the same.  (See Celestine Depo. 105:21-108:18.)  Plaintiff also changed his anticipated graduation date multiple times (despite not even being enrolled at UMUC) to extend his Loan deferment period and delay payments becoming due.  (See id. 84:9-16.)  Plaintiff similarly requested a deferment based on his claimed active military duty and submitted supporting paperwork to JPMC.  (See id. 116:14-117:24.)  However, Plaintiff subsequently admitted lying about being on active military duty, attempting to then claim JPMC acted

---

[3] The Declaration of Joseph Cambronne appears at Dkt. No. 68-3.

improperly by granting him a military deferment for which he never was eligible, despite his contrary requests and representations to JPMC. (See id. 114:8-115:25; Dkt. No. 41 ¶ 4.)

**B.    Plaintiff's Credit Reports, Credit Disputes And Other Adverse Accounts**

Since the inception of this lawsuit, Plaintiff has maintained that his credit reports contained "inconsistent and inaccurate" information regarding the Loan. (Compl. ¶ 23.) At no point during this litigation, however, did Plaintiff articulate exactly what information was supposedly "inconsistent or inaccurate" or otherwise offer any factual allegations or evidence in support of his conclusory assertions. To the contrary, as the Court confirmed in its ruling, the alleged "credit reports" that Plaintiff attached to his Complaint indisputably confirmed that the information JPMC reported about the Loan was in no way inconsistent or inaccurate. (See Compl. Ex. 1, at 30-32; Dkt. No. 105, at 3, 5.) Specifically, all three credit reports reflected the Loan as charged off and the identical amount of $36,539, representing the outstanding Loan balance prior to charge-off. (See Compl. Ex. 1, at 30-32; see also Celestine Depo. 140:19-141:2.)

Similar to Plaintiff's indeterminate legal theory in this lawsuit, Plaintiff was likewise unclear as to what exactly he was challenging in the disputes he submitted to the credit reporting agencies (the "CRAs") regarding JPMC's reporting of the Loan. Specifically, Plaintiff submitted conflicting disputes, including: (1) falsely that the Loan did not belong to him; (2) falsely that the Loan was paid in full; (3) that the Loan should not reflect a "derogatory" status; and (4) vaguely that JPMC "inaccurately reported" the Loan, without any further information. (See Declaration of John E. McKibben ¶¶ 5-8.)[4] Nonetheless, JPMC duly investigated each of Plaintiff's disputes, which all led JPMC to the same reasonable conclusion: the Loan belonged

---

[4] The Declaration of John E. McKibben appears at Dkt. No. 68-4.

to Plaintiff, had an outstanding unpaid balance and was charged off due to nonpayment. (See id. ¶¶ 9-10.)

Not surprisingly, Plaintiff defaulted on various other financial obligations with his other lenders and creditors. Plaintiff testified at his deposition that he had at least eleven (11) other adverse accounts on his credit reports, many of which were other education loans that he failed to repay. (See Celestine Depo. 200:25-201:9.) Among these various adverse accounts, one of the most notable was Plaintiff's charged-off $53,517 Navy Federal Credit Union account. (See id. 192:3-11; Compl., Ex. 1 at 31-32.) Also of no surprise, Plaintiff brought other suits against his other creditors, alleging similar causes of action, which similarly stemmed from Plaintiff's failure to repay debts or sought to hold others accountable for his poor credit score. (See Request for Judicial Notice ("RJN"), Exs. 1, 2.)

**C.   Allegations Of The Complaint**

Notwithstanding his apparent deceit and undisputed financial debt still owed to JPMC, Plaintiff brought this lawsuit based solely on JPMC's accurate reporting of the Loan to the CRAs and attempts to collect the outstanding debt Plaintiff admittedly owes. Specifically, Plaintiff alleged the following unsupportable claims against JPMC: (1) negligent and willful violations of the FCRA (Counts I & II); (2) negligent, wanton, and/or intentional hiring and supervision of incompetent employees or agents (Count III); (3) negligent, wanton, and intentional conduct (Count IV); (4) violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. (Count V); and lastly, (5) violation of the FCCPA (Count VI).

**D.   Relevant Procedural History**

On December 22, 2017, Plaintiff filed his Motion for Partial Summary Judgment (Dkt. No. 41) that sought judgment on his two FCRA claims and FCCPA claim. On February 7, 2018, JPMC filed its Response in Opposition to the Motion for Partial Summary Judgment (Dkt. No.

49), detailing the many reasons why the FCRA and FCCPA claims failed as a matter of law and were unsupported by the record evidence.  Plaintiff opted not to address these well-reasoned arguments and evidence in a Reply brief, thereby conceding these points, but still did not dismiss his claims in the face of the legal authority and evidence directly negating them.

On March 9, 2018, JPMC filed its Motion for Summary Judgment (Dkt. No. 69) and accompanying evidence (Dkt. No. 68), which again set forth comprehensive legal bases and evidence confirming that all of Plaintiff's claims had no merit and were unsupported by the record evidence and law.  This utter lack of factual support became only further and unmistakably clear when JPMC produced its confidential records shortly following the Court's entry of its Confidentiality and Protective Order (Dkt. No. 87), which re-confirmed:  (1) JPMC's communications were not harassing in content or in frequency; (2) the information JPMC furnished to the CRAs regarding the Loan was accurate; (3) Plaintiff's disputes to the CRAs regarding the Loan were contrived; (4) JPMC's investigations of those contrived disputes was at all times reasonable; and (5) Plaintiff failed to make a single payment to JPMC and still owes the entire balance on the Loan, plus fees and interest.  Nevertheless, Plaintiff still refused to enter into a stipulation of dismissal of any of his claims in the face of this overwhelming legal authority and evidence confirming that his claims were not viable.

On May 11, 2018, the Court entered the Summary Judgment Order, granting summary judgment in JPMC's favor as to all counts asserted in the Complaint and directing the clerk to close the case.  (Dkt. No. 105.)  Thereafter, Plaintiff approached JPMC and proposed that he would not appeal the Summary Judgment Order if JPMC deleted the Loan account tradeline from his credit history.  JPMC rejected Plaintff's proposal and, on June 6, 2018, Plaintiff filed his Notice of Appeal of the Summary Judgment Order.  (Dkt. No. 106.)

### III. ARGUMENT

**A. JPMC Is Entitled To Its Reasonable Attorney's Fees In Defending Plaintiff's FCRA Claims Brought In Bad Faith And For Purposes Of Harassment.**

JPMC seeks its reasonable attorneys' fees against Plaintiff pursuant to Sections 1681n(c) and 1681o(b) of the FCRA, which both in turn provide that, upon:

> [A] finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper.

15 U.S.C. §§ 1681n(c), 1681o(b).

"The term 'bad faith,' as ordinarily used in the attorney's fee context, requires a showing either that the party subjectively acted in bad faith -- knowing that he had no viable claim -- or that he filed an action or paper that was frivolous, unreasonable, or without foundation." Clemons v. Cutler Ridge Auto., LLC, No. 06-21648-CIV, 2008 WL 11409007, at *4 (S.D. Fla. June 24, 2008), report and recommendation adopted, No. 06-21648-CIV, 2008 WL 11409011 (S.D. Fla. July 14, 2008). Further, courts have not hesitated to award attorneys' fees when a pro se plaintiff brings bad faith claims under the FCRA. See e.g., Shipley v. Trans Union Corp., No. C04-2560P, 2006 WL 1515594 (W.D. Wash. May 25, 2006); DeBusk v. Wachovia Bank, No. CV 06-0324 PHXNVW, 2006 WL 3735963 (D. Ariz. Nov. 17, 2006), aff'd sub nom. DeBusk v. Wachovia Bank NA, 291 F. App'x 55 (9th Cir. 2008).

### 1. Plaintiff Acted In Bad Faith By Knowingly Filing And Pursuing His Frivolous FCRA Claims.

Plaintiff was aware that his FCRA claims against JPMC were factually and legally untenable even before the outset of his lawsuit, yet he pursued them anyway for the improper purpose of having the delinquent Loan erased from his credit history, while attempting to extort a monetary settlement along the way. As the underlying disputes Plaintiff submitted to the CRAs

- 7 -

regarding JPMC's reporting of the Loan confirm, Plaintiff's disputes were entirely contrived and submitted in such high-volume so as to overwhelm the CRAs and JPMC into deleting the Loan from his credit reports. After this strategy failed, as it should have, Plaintiff filed this action. Similarly, Plaintiff always knew that JPMC's accurate reporting of his failure to repay the Loan did not cause him any recoverable harm under the FCRA. Plaintiff admittedly had numerous other defaulted credit accounts that would disqualify him from new credit or more favorable credit. Aware of these facts, Plaintiff certainly knew that the factual basis behind his FCRA claim was not in fact true prior to filing the Complaint, yet he filed it anyway in bad faith.

Aside from the clear lack of any factual basis, Plaintiff was also aware that his FCRA claims were legally unsupported. In Celestine v. Capital One, Plaintiff asserted almost identical claims against Capital One for "negligent and willful violations of the FCRA," which Judge Scola rejected in June 2017 and ultimately dismissed for failure to allege any viable claim in September 2017. See Celestine v. Capital One, No. 17-20237-CIV, 2017 WL 2838185 (S.D. Fla. June 30, 2017); 2017 WL 4174804 (S.D. Fla. Sept. 19, 2017). Critically, Capital One filed its motion to dismiss prior to Plaintiff filing the instant action against JPMC, thereby notifying Plaintiff of the lack of any legal foundation to these claims even prior to the start of this litigation. (See RJN Ex. 3.) Yet Plaintiff still pursued his frivolous claims, exhibiting a deliberate indifference to both the obvious facts and existing law.

Only further supporting this conclusion, even from the earliest stages of this action, Plaintiff could not provide any evidence, much less meet his threshold burden of proof, to support his false claims that JPMC violated the FCRA. In fact, the credit reports that Plaintiff attached to his Complaint were self-defeating to his FCRA claims, as those reports indisputably confirmed that the information JPMC reported about the Loan was consistent and accurate. (See

Compl., Ex. 1, at 30-32; Dkt. No. 105, at 3, 5.)  Not only was the false and frivolous nature of Plaintiff's claims obvious at the time Plaintiff filed suit, but JPMC very clearly and repeatedly outlined the frivolity of Plaintiff's claims at numerous stages of this action, including at the parties' mediation conference before Magistrate Judge McAliley, the extensive summary judgment filings and JPMC's Rule 11 Motion for Sanctions.

Despite being aware that his FCRA claims were neither legally nor factually viable, Plaintiff nonetheless made a settlement demand totaling more than $3 million, which he additionally sought from the Court in purported statutory damages.  (See Dkt. No. 41.)  This completely unrealistic and unsupported damages calculation evidenced that Plaintiff had no intention to explore any reasonable resolution, but instead sought to extort a settlement from JPMC (in addition to the $21,790 windfall he already obtained in the form of the Loan proceeds that he never repaid).  Even after the Court entered the Summary Judgment Order, Plaintiff approached JPMC with a non-negotiable proposal that Plaintiff would not appeal the Summary Judgment Order in exchange for JPMC deleting the Loan tradeline from his credit history, only confirming his original intent to borrow money from JPMC, not repay it and prevent future creditors from knowing about it.

Now that JPMC has rejected Plaintiff's settlement offer, Plaintiff next intends to drag JPMC through a frivolous appeal, while subjecting JPMC to further and unnecessary legal costs, in a further attempt to force JPMC's hand in erasing the admittedly defaulted Loan from his credit history.  Doing so is yet another step in Plaintiff's larger scheme of attempting to improve his deservingly low credit score to enable him to take out additional credit from unsuspecting lenders and creditors.  Plaintiff's unreasonable multiplication of the proceedings and intent to

now pursue his claims through appeal despite a complete lack of supporting evidence or legal foundation, undeniably evidences bad faith.

### 2. Plaintiff's History Of Deceitful And Fraudulent Conduct Further Supports A Finding Of Bad Faith.

The underlying factual premise of the lawsuit further underscores Plaintiff's bad faith conduct here: Plaintiff took the $21,970 in Loan proceeds from JPMC, squandered them for an entirely different purpose than what he represented to JPMC in his Loan application and then failed to repay JPMC. Plaintiff made other misrepresentations to JPMC as well, such as changes to his non-existent graduation date and untruthful claims that he was on active military duty, all in an undeniable attempt to prolong his Loan deferment period and evade his repayment obligations.

Most telling of Plaintiff's pattern of bad faith, discovery in this action revealed that Plaintiff took out the Loan under false pretenses in the first instance. Specifically, Joseph Cambronne, the co-signer for the Loan, offered sworn testimony that he never signed, or agreed to sign, for the Loan. (See Dkt. No. 68-3.) In light of Mr. Cambronne's elderly age and language barriers, the only conclusion to be gleaned is that Plaintiff took advantage of him in furtherance of his deceptive Loan application and scheme to obtain the Loan proceeds with no intent to repay them. Upon learning of Mr. Cambronne's testimony, Plaintiff did not seek to dismiss the suit, but instead himself described Mr. Cambronne's cosigning for the Loan as part of a "fraud scheme." (Dkt. No. 95 ¶ 8.) Even more telling, Plaintiff then filed a succession of motions desperately seeking to strike Mr. Cambronne's Declaration from the record (much like his effort to erase the presence of his unpaid Loan from his credit reports). (See, e.g., Dkt Nos. 76, 80-81.)

Notably, this is not an isolated instance of Plaintiff defaulting on a financial obligation, nor is it the only lawsuit Plaintiff has filed that stems from his repayment failures. Indeed, Plaintiff has defaulted on numerous accounts, many consisting of substantial sums, and further sued other financial institutions and creditors in what appears to be a disingenuous and reoccurring effort to have his negative credit history erased. (See Celestine Depo. 192:3-193:8; 200:25-201:9; 277:7-25; see also RJN Exs. 1, 2.) As was the case against Capital One, the dismissal of which Plaintiff has appealed to the Eleventh Circuit as well, Plaintiff now seeks to prolong this frivolous litigation until the bitter end or until his intentional payment default is removed from his credit reports (which is not even relief available to him under the FCRA).

Plaintiff's bad faith is evidenced by his admittedly fraudulent acts, his misrepresentations to JPMC and the CRAs, his inability to produce evidence to support his claims, his ever-changing legal theories and his attempt to extort a settlement from JPMC both in the form of an inordinate monetary sum and tradeline deletion from his credit. Accordingly, Plaintiff's bad faith is unquestionable and, as the prevailing party in this case, JPMC is entitled to recover its attorneys' fees incurred in defending this meritless action.

**B.      JPMC Is Entitled To Its Reasonable Attorney's Fees For Its Defense Of Plaintiff's FCCPA Claim That Failed To Raise Any Justiciable Issue Of Law Or Fact.**

Section 559.77(2) of the FCCPA provides that "[i]f the court finds that the suit fails to raise a justiciable issue of law or fact, the plaintiff is liable for court costs and reasonable attorney's fees incurred by the defendant." Fla. Stat. § 559.77(2). "Florida courts have consistently held that in order for an action to be devoid of merit so as to not have a justiciable issue the claims must be 'frivolous.'" Amey, Inc. v. Gulf Abstract & Title, Inc., 758 F.2d 1486, 1508 (11th Cir. 1985) (citations omitted).

Plaintiff's FCCPA claim was completely devoid of any justiciable issue of law of fact and indisputably frivolous. As JPMC raised in its Motion for Summary Judgment, Plaintiff's FCCPA claim was not only time-barred by the FCCPA's two-year statute of limitations, but also preempted by the FCRA. Having been put on notice of the complete legal bars to his FCRA claim, Plaintiff should have, at a minimum, researched and reassessed the viability of his claim. Instead, Plaintiff merely declined to address the arguments in responding to JPMC's Motion for Summary Judgment, yet still proceeded with maintaining his unsupportable FCCPA claim.

Ultimately, the Court entered summary judgment in JPMC's favor on the FCCPA claim, agreeing that the claim "lack[s] merit." (Dkt. No. 105 at 6.) Specifically, the Summary Judgment Order held that the FCCPA claim "is barred by the FCCPA's two-year statute of limitations" and "preempted by the FCRA." (Id. at 6-7.) Accordingly, Plaintiff failed to raise a justiciable issue of law and fact in bringing the time-barred and preempted FCCPA claim. As such, pursuant to section 559.77(2) of the FCCPA, JPMC is entitled to recover its attorney's fees for having to defend against this frivolous claim.

### IV.   CALCULATION OF REASONABLE ATTORNEYS' FEES

The starting point in determining reasonable attorneys' fees is the lodestar, which is properly calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. See Norman v. Hous. Auth. of City of Montgomery, 836 F.2d 1292, 1299 (11th Cir.1988) (citation omitted). As set forth below and in its supporting documentation attached hereto, JPMC has established its entitlement to an award of its reasonable attorneys' fees based on the hours expended in its defense of this action and at the appropriate hourly rate.

**A.   Reasonable Hourly Rates**

Counsel for JPMC's reasonable hourly rates are as follows: $347 for Brian C. Frontino, partner at Stroock & Stroock & Lavan, LLP ("Stroock"); $244 for Jessica D. Rabinowitz,

- 12 -

associate attorney at Stroock; $244 for Daniel Shatz, former associate attorney at Stroock handling this matter; $234 for Robert Kiss, former associate attorney at Stroock handling this matter; and $191 for Debbie Fernandez, paralegal at Stroock. The billing rates for the Stroock attorneys are particularly appropriate given their experience and specialization in defending against consumer claims, such as the FCRA and FCCPA, asserted against financial services companies. Pursuant to Local Rule 7.3(a)(5), the identity, experience, and qualifications for each timekeeper for whom fees are sought are more fully set forth in the Declaration of Jessica Rabinowitz ("Rabinowitz Declaration"), which is attached hereto as Exhibit A. Without waiver of the attorney-client and/or attorney product doctrine, the billing records (redacted for privilege) for the months of April 2017 through May 2018, which document the number of hours reasonably expended by each such timekeeper, a description of the tasks performed during those hours and the hourly rates claimed for each timekeeper, are attached to the Rabinowitz Declaration.

By way of comparison, another court has approved the following higher hourly rates charged by Stroock's attorneys and staff in another case representing a different client, finding the rates reasonable given counsel's level of experience: $710 hourly rate for Brian Frontino; $475 hourly rate for associate attorneys; and $270 hourly rate for paralegals. (See RJN Ex. 4.) Similarly, Florida district courts, including the Southern District of Florida, have opined that $300.00 per hour, or more, is a reasonable rate for attorneys with comparable experience in similar cases. See, e.g., Turner v. Hollywood Rest. Grp., LLC, No. 08-61068-CIV, 2008 WL 11332075, at *2 (S.D. Fla. Nov. 17, 2008), report and recommendation adopted, No. 08-61068-CIV, 2008 WL 11333548 (S.D. Fla. Dec. 10, 2008) (approving $300 hourly rate in FCRA case); Rodriguez v. Florida First Financial Group, Inc., 2009 WL 535980, *8 (M.D. Fla. March 3,

2009) (concluding $350 hourly rate appropriate in FDCPA case that involved an evidentiary hearing and a particularly difficult defendant); Valencia v. Affiliated Grp., Inc., 674 F. Supp. 2d 1300, 1308 (S.D. Fla. 2009) (finding that $300 hourly rate in FDCPA case was reasonable and fully in line with the rates charged in the South Florida legal community); Golf Clubs Away, LLC v. Hostway Corp., No. 11-62326-CIV, 2012 WL 2912709, at *3 (S.D. Fla. July 16, 2012) (concluding that "the average partner rate in Southern Florida in 2011 was $482 per hour and the average associate rate was $303 per hour").

### B.     Reasonable Number Of Hours

The docket activity for this case reflects that JPMC originally answered the unwieldy 154-paragraph complaint asserting six (6) causes of action, raising numerous affirmative defenses, and filed a motion to compel arbitration before it ultimately proceeded to litigate Plaintiff's claims before this Court.  JPMC was actively engaged in litigating this case as evidenced by appearing at mediation, responding to Plaintiff's Motion for Partial Summary Judgment, filing its own Motion for Summary Judgment on all of Plaintiff's claims, conducting discovery and extensive discovery-related motions and preparing for trial leading up to the Court's entry of the Summary Judgment Order in JPMC's favor as to all counts.  The amount of time spent was entirely reasonable considering that the case involved extensive motion practice and fact discovery on Plaintiff's frivolous FCRA and FCCPA causes of action, and with a particularly difficult and vexatious plaintiff.  Further, this action proceeded to the eve of trial, requiring JPMC to engage in its trial preparation efforts, including extensive efforts to draft and confer on a joint pretrial stipulation with Plaintiff.  Moreover, despite Plaintiff waiving his FCCPA claim by failing to respond to JPMC's arguments at the summary judgment stage, Plaintiff refused to dismiss the claim leading up to trial thus necessitating the parties to include and address in detail this waived cause of action in the joint pretrial stipulation.

Based on these circumstances, the amount of time required to defend this action was reasonable and thus an award of fees incurred for that time is particularly appropriate. JPMC's billing invoices, which set forth the number of hours reasonably expended by JPMC's counsel, further support the number of hours sought for legal work performed in defending against the FCRA and FCCPA claims. (<u>See</u> Rabinowitz Decl. Ex. 1.) The hours sought have been reduced to account only for the primary attorneys and paralegal that worked on this case. The hours have further been reduced to exclude time expended on addressing Plaintiff's two negligence-based claims (Counts III and IV) and claim for violation of the Telephone Consumer Protection Act (Count V), which do not provide any statutory mechanism for recovery of prevailing party fees sought in this Motion.[5]

### V.  CONCLUSION

For the foregoing reasons, JPMC respectfully requests that this Court enter an Order awarding JPMC's prevailing party attorneys' fees in the amount of $166,942.00, as well as for full taxable costs in the amount of $3,959.85 as set forth in its separately filed Application for Bill of Costs and any further relief this Court deems necessary and just.

**CERTIFICATE OF GOOD FAITH CONFERRAL
PURSUANT TO LOCAL RULES 7.3(a)(8) AND 7.3(b)**

Pursuant to Southern District of Florida Local Rule 7.3(b), undersigned counsel certifies that, on June 11, 2018, JPMC served a certified draft of this Motion on Plaintiff by electronic and U.S. mail. Pursuant to Local Rules 7.3(a)(8) and 7.3(b), undersigned counsel further certifies that, on June 20, 2018, following service of the Motion and in advance of Plaintiff's June 25,

---

[5] JPMC excluded the hours spent by non-primary legal staff and on legal work addressing the three causes of action, for purposes of this Motion only. In so doing, JPMC does not concede that the excluded fees are not otherwise recoverable and expressly reserves its right to seek recovery of such fees as may be appropriate.

LA 52175997

2018 deadline to object to any specific time entry pursuant to Local Rule 7.3(a), undersigned again attempted to confer with Plaintiff in a good faith effort to resolve by agreement the issues raised in this Motion, including JPMC's entitlement to, and the amount of, fees, as well as alert Plaintiff of his approaching June 25, 2018 objection deadline.  That same day, Plaintiff responded via email to undersigned, stating that the parties had already conferred on JPMC's requested relief and further instructing JPMC and its counsel to cease all future communications with Plaintiff, or else Plaintiff would seek judicial intervention.  A true and correct copy of the email chain between undersigned and Plaintiff is attached hereto as Exhibit B.  Plaintiff failed to serve any written objections with respect to any specific time entry set forth in the Motion and JPMC's supporting documentation by the June 25, 2018 deadline, as required by Local Rule 7.3(a), and as of the date of filing this Motion, has yet to serve any such objections.

Dated:  July 10, 2018.                    Respectfully submitted,

By:  /s/ *Jessica D. Rabinowitz*
Brian C. Frontino
Florida Bar No. 95200
Jessica D. Rabinowitz
Florida Bar No. 106163
STROOCK & STROOCK & LAVAN LLP
200 South Biscayne Boulevard, Suite 3100
Miami, Florida 33131
Telephone:  (305) 358-9900
Facsimile:  (305) 789-9302
bfrontino@stroock.com
jrabinowitz@stroock.com
lacalendar@stroock.com

Attorneys for Defendant
    *JPMorgan Chase Bank, N.A.*

## VERIFICATION

I declare under penalty of perjury under the laws of the United States that the foregoing statements are true and correct. Executed this 10th day of July, 2018, at Miami, Florida.

_____
Jessica D. Rabinowitz

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on June 11, 2018, and again on July 10, 2018, on Plaintiff via electronic and U.S. Mail at the addresses identified in the Service List below.

/s/ Jessica D. Rabinowitz
Jessica D. Rabinowitz

**SERVICE LIST**

Joseph Celestine
1801 SW 23 Terrace
Miami, Florida 33145
jalva321@gmail.com

*Plaintiff*