UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 17-CV-20915-MOORE/LOUIS

JOSEPH CELESTINE,

    Plaintiff,

vs.

JPMORGAN CHASE BANK, N.A.,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

THIS CAUSE is before the Court on Defendant JPMorgan Chase Bank, N.A.'s Motion for Attorneys' Fees (ECF No. 113), and Plaintiff Joseph Celestine's Motion to Strike (ECF No. 116). These motions were referred to the undersigned United States Magistrate Judge by the Honorable K. Michael Moore, Chief United States District Judge, for a Report and Recommendation (ECF No. 115, 119). These matters are now ripe for review. For the following reasons, the undersigned recommends that Defendant's Motion for Attorneys' Fees be GRANTED IN PART, and Plaintiff's Motion to Strike be DENIED.

**I.    BACKGROUND**

Plaintiff Joseph Celestine filed this action on March 10, 2017 (ECF No. 1) against Defendant JPMorgan Chase Bank, N.A. Plaintiff's Complaint alleged six counts against Defendant for negligent and willful violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. (the "FCRA") (Counts I and II); negligent, wanton, and/or intentional hiring and supervision of incompetent employees or agents (Count III); negligent, wanton, and intentional

1

conduct (Count IV); violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. (the "TCPA") (Count V); and violation of the Florida Consumer Collection Practices Act, Fla. Stat. §§ 559.55-559.785 (the "FCCPA") (Count VI).

Plaintiff's allegations arose from a private education loan ("the Loan") that he procured from Defendant for $21,790, on June 30, 2008. Defendant agreed to defer Plaintiff's required payments on the Loan until Plaintiff graduated from school. The deferment period ended in December 2013, and though Plaintiff was obligated to begin making payments on the Loan at this time, he never made a single payment. Defendant attempted to contact Plaintiff multiple times regarding his deficient loan status, and was successful only twice in reaching him by phone.

Following Defendant's inquiries and unsuccessful attempts to collect payment from Plaintiff, Defendant charged off[1] the Loan on June 30, 2014, in the amount of $38,167, which included principal and capitalized interest. Thereafter, Defendant reported to various credit reporting agencies the charged off amount of $38,167, in addition to reporting the outstanding Loan balance of $36,529. Plaintiff disputed Defendant's reporting of the Loan to the credit reporting agencies. Between March 2015 and February 2017, Plaintiff submitted nine letters to the credit reporting agencies, contending that the Loan was not his, that he paid the Loan in full, that the Loan was not "derogatory," and that Defendant "inaccurately reported" the Loan. Defendant investigated these disputes and confirmed to the agencies that the Loan details were accurate as reported and the Loan belonged to Plaintiff. Defendant consistently reported that the

---

[1] The term 'charge off' means that the original creditor has given up on being repaid according to the original terms of the loan. It indicates that the lender considers the remaining balance to be bad debt, but not that the borrower no longer owes the amount due. After an account is charged off by the original lender it is often sent to a collection agency. The collection agency will then attempt to recover the remaining amount and potentially additional interest and fees. *See* The Experian Team, *Charged Off Debt Must Still Be Repaid*, Experian's Official Credit Advice Blog (July 13, 2016) (https://www.experian.com/blogs/ask-experian/charged-off-debt-must-still-be-repaid/).

outstanding balance of the Loan was $36,539, and that the June 2014 charge off amount was $38,167.

Plaintiff attached several of these dispute letters as exhibits to his complaint in the present suit (ECF No. 1-2).[2] Though each is labelled "Joseph Celestine Letter to Chase," the letters were in fact addressed and delivered to the credit reporting agencies Experian, Equifax, and TransUnion. In the first batch of letters, Plaintiff expressed his belief that the amount on his credit report is "incorrect." *Id.* at 2-6. He wrote that "[t]here were never any payments made to JPM CHASE therefore account should show NO DATA or DEROGATORY." *Id.* Plaintiff also represented "This account does not belong to me" and demanded each agency "remove [the Chase report] from my credit report as they are all incorrect." *Id.* Plaintiff's follow-up letters contained similar representations and demands for removal of the Chase Loan: that the Chase report was an "erroneous item," which he demanded "be verified or removed immediately," and stating "I am a litigious consumer and fully intend on pursuing litigation in this matter to enforce my rights under the FCRA in Federal Court." *Id.* at 9-27. Plaintiff also attached his credit reports to his complaint, which undisputedly showed the Loan's outstanding balance due was reported as $36,539 and its charge-off amount was $38,167. *Id.* at 29-32.

Following the inception of this lawsuit, both parties filed motions for summary judgment (ECF No. 41, 69). Plaintiff first filed his motion for partial summary judgment on December 22, 2017 (ECF No. 41), on his two FCRA claims and his FCCPA claim. Defendant responded to Plaintiff's motion on February 7, 2018 (ECF No. 49); and filed its own motion for summary judgment on March 9, 2018 (ECF No. 69).

---

[2] ECF No. 1-2 refers to a composite exhibit attached to Plaintiff's Complaint, which contains these dispute letters, among other exhibits.

On May 11, 2018, the Court granted summary judgment in favor of Defendant on all counts and closed the case (ECF No. 105). Relevant to the present motion, the Court granted summary judgment on the FCRA counts because the record evidence showed that the amounts on Plaintiff's credit reports were accurate and that Defendant reasonably investigated Plaintiff's disputes. The Court granted summary judgment on the FCCPA count because Plaintiff's claim had been waived by Plaintiff's lack of response to Defendant's summary judgment arguments, and was anyways time-barred and preempted by the FCRA.

On July 10, 2018, Defendant timely filed its motion for attorneys' fees, seeking $166,942 from Plaintiff for the cost of defending against Plaintiff's suit.[3] Defendant separately filed a request for the Court to take judicial notice of other cases involving Plaintiff.

On July 19, 2018, Plaintiff filed a motion to strike Defendant's motion for attorneys' fees, stylized as "Plaintiff's Renewed Motion in Opposition to Attorney's Fees and Motion to Strike" (ECF No. 116). Defendant responded to this motion on August 2, 2018 (ECF No. 118). Defendant also filed a reply in support of its attorneys' fees motion on July 26, 2018, construing Plaintiff's motion to strike as a response to its attorneys' fees motion (ECF No. 117).

## II.   DISCUSSION

### A.   Plaintiff's Motion to Strike (ECF No. 116)

The undersigned first addresses Plaintiff's "motion to strike." Though the motion asks the Court to "deny or strike" the motion for fees, it does not meet the requirements for a motion to strike. Motions to strike may be brought pursuant to Federal Rule of Civil Procedure 12(f), which allows the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Defendant's motion for attorney's fees is not an

---

[3] Defendant also moved for costs pursuant to 28 U.S.C. § 1921 (ECF No. 93). By Report and Recommendation filed on September 28, 2018, the undersigned recommended that the motion be granted, in part (ECF No. 106). No objections have been filed.

"insufficient defense" or a "redundant, immaterial, impertinent or scandalous matter." *See N. Assur. Co. of Am. v. Bayside Marine Const., Inc.*, No. CIV. A. 08-222-KD-B, 2009 WL 151023, at *5 (S.D. Ala. Jan. 21, 2009) (motion to strike "not the proper vehicle" to strike claim for attorneys' fees). Other than his complaint that he was harassed by Defendant's pre-motion attempts to confer (which Defendant was required by local rule to do), Plaintiff has not raised any grounds to strike the motion. In fact, the only references to Defendant's motion to fees Plaintiff even makes are found in the first and last paragraphs of the motion to strike; the body of the pleading appears to be redundant to a discovery motion filed in this case. Accordingly, to the extent Plaintiff's opposition is deemed a motion to strike, the undersigned recommends denying that motion. The undersigned has construed the motion as a response in opposition to Defendant's motion for attorneys' fees.

### B. Defendant's Motion for Attorneys' Fees (ECF No. 113)

#### 1. Entitlement to Fees

Defendant's motion for attorneys' fees is predicated on the fee-shifting provisions of the FCRA and the FCCPA. The FCRA provides that "[u]pon a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper." 15 U.S.C. § 1681n(c); *see also* 15 U.S.C. § 1681o(b).

The term "bad faith" is not defined under the FCRA. Courts in our district have found that a showing of objective bad faith is sufficient to show that attorneys' fees are warranted under the statute. *See Edwards v. Auto Showcase Motorcars of Palm Beach, LLC*, No. 09-80932-CIV, 2011 WL 1303166, at *1 (S.D. Fla. Apr. 5, 2011) ("Bad faith is an objective standard that

5

is satisfied when an attorney knowingly or recklessly pursues a frivolous claim."); *Rapapport v. Green Tree Servicing, LLC*, No. 13-61624-CV, 2013 WL 5728731, at *7 (S.D. Fla. Oct. 22, 2013). The movant can show that the losing party "subjectively acted in bad faith—knowing that he had no viable claim," or that he "filed an action or paper that was frivolous, unreasonable, or without foundation." *Smith v. HM Wallace, Inc.*, No. 08-22372-CIV-GOL, 2009 WL 3179539, at *2 (S.D. Fla. Oct. 1, 2009); *Clemons v. Cutler Ridge Auto., LLC*, No. 06-21648-CIV, 2008 WL 11409007, at *4 (S.D. Fla. June 24, 2008), *report and recommendation adopted*, No. 06-21648-CIV, 2008 WL 11409011 (S.D. Fla. July 14, 2008).

The FCCPA similarly provides that "[i]f the court finds that the suit fails to raise a justiciable issue of law or fact, the plaintiff is liable for court costs and reasonable attorney's fees incurred by the defendant." Fla. Stat. § 559.77(2). Though the statute does not define what constitutes a failure to raise a justiciable issue of law or fact, courts in our district have concluded that this standard is tantamount to a finding that the FCCPA claim was "frivolous." *See Conner v. BCC Fin. Mgmt. Servs.*, Inc., 597 F. Supp. 2d 1299, 1302 (S.D. Fla. 2008).

Defendant contends that Plaintiff initiated and pursued his FCRA claims in bad faith and for purposes of harassment because Plaintiff knew that his claims were factually and legally untenable, yet pursued them for the purpose of having his loan erased from his credit history. Plaintiff has not meaningfully opposed the motion. In response, he filed the "motion to strike" described above, which challenges neither Defendant's entitlement to fees, nor the amount of fees sought.

The record supports Defendant's characterization of Plaintiff's suit as frivolous. At the time he filed suit, Plaintiff lacked a reasonable basis to believe that the charges on his credit reports were inaccurate. It is undisputed that Plaintiff knew that he took out a student loan with

Chase, and it is undisputed that he had not made any payments on it. Yet in the letters Plaintiff sent to the credit reporting agencies, he falsely claimed that the Chase account "[did] not belong to me" and was "incorrect." When the Loan became delinquent, Defendant accurately reported the account to the credit reporting agencies and consistently reported an outstanding balance of $36,539 and a charge off amount of $38,167. This was done so that Defendant could recover from Plaintiff the debt owed pursuant to the Loan.

Plaintiff's FCRA claim as filed was dead on arrival. The crux of Plaintiff's argument appears to be that, because Defendant reported different numbers for the outstanding balance of $36,539 and a charge off amount of $38,167, Defendant inaccurately reported his debt to credit reporting agencies, and failed to make a reasonable inquiry before doing so. But Plaintiff's credit reports, which Plaintiff attached to the complaint, show that these two amounts had different meanings: one for the outstanding balance and one for the amount charged off. *See* ECF No. 1-2 at 30-32. The accuracy of Plaintiff's contested credit report was apparent from the face of the pleadings and exhibits thereto. *Compare Clemons v. Cutler Ridge Auto., LLC*, No. 06-21648-CIV, 2008 WL 11409007, at *4 (S.D. Fla. June 24, 2008) (denying motion for fees where statute of limitations defense was <u>not</u> apparent from the face of the pleadings), *report and recommendation adopted*, No. 06-21648-CIV, 2008 WL 11409011 (S.D. Fla. July 14, 2008). A reasonable inquiry would thus show the absence of any inaccuracy on his credit reports with respect to the Loan. Plaintiff has not alleged that he was confused about or even ignorant of this distinction, but instead accused Defendant of inaccuracy, without any supporting evidence and indeed evidence to the contrary. Plaintiff cannot now "expect to escape liability under 15 U.S.C. § 1681n(c) when he has repeatedly forced Defendant to respond to baseless allegations abundantly contradicted by the only credible evidence." *DeBusk v. Wachovia Bank*, No. CV 06-

7

0324 PHXNVW, 2006 WL 3735963, at *6 (D. Ariz. Nov. 17, 2006), *aff'd sub nom. DeBusk v. Wachovia Bank NA*, 291 F. App'x 55 (9th Cir. 2008). The undersigned finds that Plaintiff's FCRA claim was frivolous.[4]

But Plaintiff did not merely file a frivolous complaint: he also filed numerous motions and responses reiterating his frivolous FCRA claims, including moving to strike Defendant's defenses, moving for summary judgment, and opposing Defendant's motion for summary judgment. As the evidence mounted that Plaintiff in fact had no evidence to support his claim, Plaintiff had numerous opportunities to back down, but instead pressed forward, even moving for sanctions against Defendant (ECF No. 97). Plaintiff's "extremely uncooperative" conduct during the litigation unnecessarily increased Defendant's cost to defend the suit. *See*, *e.g.*, *Shipley v. Trans Union Corp.*, No. C04-2560P, 2006 WL 1515594, at *3 (W.D. Wash. May 25, 2006) (awarding $17,000 in attorneys' fees for defense of FCRA claim against *pro se* plaintiff). For example, Plaintiff failed to appear for his own deposition (necessitating a motion to compel and hearing), and opposed Defendant's motion for entry of a protective order, which it sought in order to produce documents with adequate assurance of protection Plaintiff's personal identification information. While the objective indicia of frivolity are sufficient to find bad faith here, Plaintiff's post-judgment of an appeal—which was dismissed for lack of prosecution—

---

[4] Defendant argues that the circumstances surrounding Plaintiff's procurement of the loan also warrant a finding of bad faith. Specifically, Defendant notes that the co-signer to Plaintiff's loan, Joseph Cambronne, testified and gave a sworn affidavit that his signature on Plaintiff's loan documentation was forged and that he never intended to co-sign Plaintiff's loan. Plaintiff has denied any knowledge or involvement in the forgery. Defendant also avers that Plaintiff did not use his loan proceeds for his stated purpose: he did not attend UMUC and did not notify Defendant of this fact. Plaintiff does not dispute that he did not attend UMUC, but testified at his deposition that he attended a different school, University of Phoenix, and did not know that he was required to inform Defendant of that change. Though these facts, if true, demonstrate an absence of candor throughout Plaintiff's relationship with Defendant, the undersigned has not relied on these allegations in my finding of Plaintiff's bad faith.

Nor does the undersigned consider Plaintiff's other lawsuit, *Celestine v. Capital One*, No. 17-20237-CIV, in recommending a finding of bad faith. Though Plaintiff's claims against Capital One and Defendant were both brought under the FCRA, the factual circumstances differ. In *Capital One*, Plaintiff alleged that Capital One had unlawfully accessed his credit reports in violation of the FCRA. There were no allegations that Capital One had inaccurately reported amounts or failed to investigate disputes, as were brought in this case.

provides further evidence of his pattern of harassing course of conduct in this litigation.[5] Put simply, Plaintiff lacked any evidence whatsoever that Defendant was in violation of the FCRA, yet pursued his litigation against Defendant for years.

The undersigned finds that Plaintiff's FCCPA claim similarly was frivolous as filed. The claim was time barred, as Defendant raised in its affirmative defenses, and again at summary judgment, both in its opposition to Plaintiff's motion for summary judgment (ECF No. 49) and in its motion for summary judgment (ECF No. 69). The Court ultimately agreed, and granted summary judgment on the grounds that Plaintiff's FCCPA claim was time-barred by the applicable two-year statute of limitations.[6] A reasonable investigation of the facts and law would have reached this conclusion. *Compare Yarbrough*, 2011 WL 860435, at *12 (declining to find absence of justiciable issue of law or fact, for purposes of fee-shifting, where plaintiff dismissed his own claims after discovery, and court never reached decision on merits of claim). Unlike the plaintiff in *Yarbrough*, Plaintiff here never dismissed his FCCPA claim, though he did fail to respond to any of Defendant's arguments made in its summary judgment motion. This failure to respond is not comparable to a voluntary dismissal, especially considering that Plaintiff moved for summary judgment on his FCCPA claim and did not withdraw that motion. *See* ECF No. 79 at 5, 10. Plaintiff's FCCPA claim "fail[ed] to raise a justiciable issue of law or fact" and, despite numerous opportunities and notice of the deficiencies, he never retracted it. For these reasons, an award of attorneys' fees under the FCRA and FCCPA is justified.

---

[5] Defendant avers without support that Plaintiff attempted to negotiate a post-judgment settlement: that he would forego his appeal in this case if Defendant would delete the Loan account tradeline from his credit history, which is relief to which he would not have been entitled even if he had prevailed. Though this would tend to further demonstrate that Plaintiff filed this action for reasons unrelated to its merits, the undersigned will not credit the unsubstantiated proffer in Defendant's motion as evidence.
[6] The Court additionally held that the claim was preempted by the FCRA.

### 2. Amount of Fees

The Eleventh Circuit has adopted the lodestar method to determine the reasonableness of an award of attorneys' fees. *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). Although the Eleventh Circuit set forth the lodestar approach in *Norman*, it has reiterated that at least some of the factors articulated in the older *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989), still have some utility in establishing the appropriate hourly rate. *Norman*, 836 F.2d at 1299.

To determine a lodestar amount, a court must ascertain a reasonable hourly rate and multiply it by the number of hours an attorney reasonably expended on the litigation. *Norman*, 836 F.2d at 1299. Where the time or fees claimed seem excessive, or there is a lack of support for the fees claimed, "the court may make the award on its own experience." *Id.* at 1303. The burden of establishing that the fee request is reasonable rests with the fee applicant, who must "submit evidence regarding the number of hours expended and the hourly rate claimed." *U.S. ex rel. Educ. Career Dev., Inc. v. Cent. Fla. Reg'l Workforce Dev. Bd., Inc.*, No. 6:04CV93ORL19DABC, 2007 WL 1601747, at *3 (M.D. Fla. June 1, 2007) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *see also* S.D. Fla. Local Rule 7.3(a). Evidence in support of the fee applicant's request requires "sufficient particularity so that the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303. The party seeking fees must supply the Court with "'specific and detailed evidence' in an organized fashion." *Machado v. DaVittorio, LLC*, No. 09–23069–CIV, 2010 WL 2949618, at *1 (S.D. Fla. July 26, 2010) (quoting *Norman*, 836 F.2d at 1303).

### a.     Reasonable Hourly Rates

A reasonable hourly rate is defined as the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman,* 836 F.2d at 1299. Under a fee-shifting statute, a prevailing plaintiff is only entitled to have the losing party pay for an attorney with reasonable expertise at the market rate, not for the most experienced attorney. *See Am. Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999). While the particular expertise, experience, and prestige of Defendant's attorneys may be taken into account, the fees are constrained to the range of the prevailing market rates. The relevant legal community for purposes of determining the reasonable hourly rate for an attorney's service is "the place where the case is filed." *Cullens v. Georgia Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994). The fee applicant bears the burden of demonstrating that the rates charged are reasonable in the relevant legal community. *Norman*, 836 F.2d at 1299. The Court is deemed an expert on the issue of attorneys' fees and rates and "may consider its own knowledge and experience concerning reasonable and proper fees." *Norman*, 836 F.2d at 1303 (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)).

The undersigned has carefully reviewed Defendant's submissions. Defendant's motion is supported by the affidavit of associate Jessica Rabinowitz, who attests to the years of experience[7] and hourly rate of the attorneys for whom Defendant seeks to recover fees, as well as one paralegal. Ranging from $234 per hour for an associate to $347 per hour for partner Brian Frontino, counsels' rates are reasonable and consistent with rates awarded in this district for similarly-experience counsel. *See Hermosilla v. Coca-Cola Co.*, No. 10-21418-CIV, 2011 WL

---

[7] The affidavit provides no information about the experience or expertise of the identified time-billers beyond their years of experience.

11

9364952, at *1 (S.D. Fla. July 15, 2011), *subsequently aff'd*, 492 F. App'x 73 (11th Cir. 2012) (reducing fee award for premium South Florida and New York law firms to $425/hour per partner and $225/hour per associate). While $191 per hour may be high for a paralegal's hourly rate, Ms. Fernandez has twenty-three years of experience, and she aptly applied that experience here to start pleadings and perform other skilled, non-administrative tasks.

Plaintiff has articulated no objection to the reasonableness of the rates Defendant advances in Ms. Rabinowitz's affidavit, and the undersigned finds the rates to be reasonable. However, Defendant's submission of time records include entries made by persons other than those identified in Ms. Rabinowitz's affidavit, and for whom the Defendant has provided no information from which the Court could determine the reasonableness of their hourly rates. Because the undersigned has no basis to conclude that the rates charged by those billers are reasonable, the undersigned has not considered those entries in the calculation of recommended fees.

### b.     Number of Hours Reasonably Expended

The next step in the computation of the lodestar is a determination of reasonable hours expended on the litigation. A fee applicant must set out the general subject matter of the time expended by the attorney "with sufficient particularity so that the court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303. Excessive, redundant, or otherwise unnecessary hours should be excluded from the amount claimed. *Id.* at 1301. A fee applicant must exercise billing judgment by excluding "excessive, redundant or otherwise unnecessary [hours]." *Hensley*, 461 U.S. at 434. Where a fee applicant does not exercise billing judgment, "courts are obligated to do it for them." *ACLU of Ga.*, 168 F.3d at 428. When a request for attorneys' fees is unreasonably high, the court "may conduct an hour-by-hour analysis or it may

reduce the requested hours with an across-the-board cut," but it cannot do both. *See Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1351 (11th Cir. 2008).

As a starting point, Defendant may only recoup the fees it incurred in defense of Plaintiff's FCRA counts and FCCPA count (the "fee shifting counts"); but not time spent on the negligence-based counts or the TCPA count (the "non-fee shifting counts"). Defendant acknowledges this limitation and avers in its motion and supporting affidavit that it has already reduced the number of hours sought to account for the non-fee shifting counts (a claimed reduction of $3,346.60).

However, the attached billing records do not permit the undersigned to conclude that only time on the fee-shifting claims was submitted. Many of the time entries are too vague to assess whether the time was incurred on a particular claim, such as "Review, revise and comment on answer" (ECF No. 113-1 at 12) or "Research and revise Motion for Summary Judgment" (*Id.* at 74). Other entries are so heavily redacted that the undersigned cannot determine what task was performed, in defense of which claim, or that it was necessary for the defense of the case. *See Shipping & Transit, LLC v. 1A Auto, Inc.*, 283 F. Supp. 3d 1290, 1305 (S.D. Fla. 2017).

Beyond those entries being too vague to determine whether the time incurred was necessary for the defense of the fee shifting claims, Defendant's time records include tasks manifestly dedicated to other endeavors, such as in pursuit of a counterclaim, and in defense of the negligence claims. Those fees too may not be shifted to Plaintiff.

The undersigned recommends further reducing the number of hours to account for redundancy between the time-billers. "Redundant hours must be excluded from the reasonable hours claimed by the fee applicant." *ACLU of Ga.,* 168 F.3d at 432. Such "hours generally occur where more than one attorney represents a client." *Norman*, 836 F.2d at 1301-1302. While there

13

is nothing unreasonable about a client having multiple attorneys, a fee applicant may only recover for the hours of multiple attorneys if the attorneys "are not unreasonably doing the same work, and are being compensated for the distinct contribution of each lawyer." *Norman* 836 F.2d at 1302; *ACLU of Ga.,* 168 F.3d at 432. A fee applicant has the burden to show "that the time spent by those attorneys reflects the distinct contribution of each lawyer to the case and is the customary practice of multiple-lawyer litigation." *Id.*

Defendant's attorneys' billing records do not show the division of labor among the attorneys for similar work. Instead, the records demonstrate a substantial degree of duplication between billing attorneys' efforts without indicators of distinct contribution. Defendant may not recover attorneys' fees from these duplicate billing entries. Having carefully reviewed the time entries, the undersigned commends defense counsel for relying so heavily on fifth-year associate Jessica Rabinowitz to carry the laboring oar for most of the case. Defense counsel similarly used the time of paralegal Debbie Fernandez efficiently for a number of tasks. Notwithstanding, the entries still reflect an apparent and significant overlap of time incurred by multiple attorneys on the same tasks, without meaningfully distinguishing in their time descriptions the respective contributions of each.

Nor may Defendant recover fees incurred in commission of non-legal or administrative tasks. It is well established that an applicant for attorneys' fees "is not entitled to compensation at an attorney's rate simply because an attorney undertook tasks which were mundane, clerical or which did not require the full exercise of an attorney's education and judgment." *Norman*, 836 F.2d at 1306; *Tiramisu In'l LLC v. Clever Imports LLC*, 741 F. Supp. 2d 1279, 1297 (S.D. Fla. 2010). Defendant's records reflect a number of non-legal tasks, including updating the client litigation report.

14

Finally, the undersigned observes that the total time incurred to defend this action exceeded that which was necessary. As noted above, the claims presented by this *pro se* Plaintiff were untenable on the face of the complaint and exhibits thereto. Defense counsel's strategy and defense of the case incurred 654.3 hours between a partner, three associates, and a paralegal. Because cases of comparable merit have been successfully defended in a fraction of the time, the undersigned recognizes that the total hours here were not necessarily incurred in defense of the fee-shifting claims. *See, e.g., Shipley*, 2006 WL 1515594, at *3 (67.6 hours billed in defense against FCRA claims filed in bad faith by *pro se* plaintiff).

Having determined that Defendant is not entitled to an award of all of the time incurred and submitted in support of its motion, the undersigned recommends a reduction by percentage, rather than line entry for several reasons. While it is possible to excise those entries deficient for vagueness, redaction, or submitted by an unidentified time biller, reducing the hours incurred on tasks unrelated to the fee-shifting claims would depend on a fair degree of guess work on my part. Otherwise stated, again the billing records do not provide sufficient detail for me to clearly identify those tasks necessarily undertaken in defense of the fee-shifting claims. Similarly, the records reflect significant overlap in the redundancy of time by multiple billers, with no differentiation in tasks; reducing the redundant time entries however would require more information than that presented in the submission. Accordingly, the undersigned recommends reducing the hours with an across-the-board cut to 108.6 hours, or 15% of the total hours submitted. The undersigned further recommends multiplying this number of hours by $252, which is the average of all time-billers' hourly rate. Accordingly, the resulting lodestar amount is $27,367.20, which is the amount recommended to be awarded to Defendant for its defense of Plaintiff's frivolous institution and pursuit of the fee-shifting claims.

**III.    RECOMMENDATION**

For the foregoing reasons, the undersigned RECOMMENDS that Defendant's Motion for Attorneys' Fees (ECF No. 113) be GRANTED IN PART, and that Defendant be awarded the amount of $27,367.20 in total fees. The undersigned further RECOMMENDS that Plaintiff's Motion to Strike (ECF No. 116) be DENIED.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable K. Michael Moore, Chief United States District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. *See* 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *Patton v. Rowell*, 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security*, 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

RESPECTFULLY SUBMITTED this 24th day of October, 2018.

LAUREN LOUIS
UNITED STATES MAGISTRATE JUDGE